Martin, J.
The original action against the sureties was for a breach of the following condition of the executor’s bond:
'■'•Secondly: Shall administer according to law, and to the will of said testator, all his goods, chattels, rights and credits, and the proceeds of all his real estate, that may be *599 sold for the payment of his debts, or legatees, which shall at any time come to the possession of the executor, 'or the possession of any other person for him.”
The default assigned was the failure to pay over proceeds of remainders in real and personal estate which had been converted into money by the executor. The sureties claim that the conversion was not authorized by the will or statute, and that consequently the alleged default was no breach of the condition.
The executor was appointed in 1856. ' In April, 1859, he bad paid all the debts and turned over unconditionally all the personalty to the widow, and settled an account in the probate court. Presumably he1 had no remaining duty to perform. There were no debts or legacies to be paid, and he had no right to retain assets. The devise to the widow was of all the personal property, and was in its nature specific. The assent by the executor was a relinquishment of all claim to the property and perfected the title of the widow and the remaindermen.
The real estate was sold professedly to pay a debt of the widow, and divide the residue of the proceeds among the devisees. As we have seen, the testator gave to the widow with power of sale, &c., all his real and personal estate so long as she should remain his widow, and upon her death or marriage, the remainder to be equally divided among his grandchildren, as they became of age.
The only objects of his bounty were his widow and grandchildren. His manifest purpose was to provide a support for her during -widowhood, and when that object was accomplished to pass to his grandchildren all .that might be left. To carry out this purpose'he gave her a life estate determinable upon her marriage; and the more conveniently to ensure her comfort he charged upon the remainder her proper debts outstanding'at her death. To the grandchildren he gave a vested interest in remainder in the unconsumed personalty, and a remainder in fee in the realty after the determination of her life estate, the *600 same to be divided equally among them as they become of age.
The words of devise to the widow are not inconsistent with a fee in remainder. And it is well settled that where, as in this instance, the devise in remainder is of the entire beneficial interest, it carries a fee unless its words clearly manifest a contrary intent. It is also clear, both on principle and authority, that a devise in fee is not to be modified or fettered with a trust, by construction of its words, unless they plainly show that such was the intention of the testator. Such an intention is not to be imputed to him upon mere conjecture. We are to read this will in the light of these principles. It must be conceded that .there was no express duty imposed on the executor with respect to the remainders. It is claimed that it was his duty to convert the remainders into money by necessary implication from his duty, also implied, to pay the charge and to divide the land. The liability of the sureties hinges on the question whether the words of gift to the grandchildren of necessity raise an implication of trust for the purposes of exoneration and division. The. widow survived the testator about twenty years. At the date of his will the grandchildren were probably all under age. The words of the clause relative to a division of the remainders, by strict and natural construction, indicate that the testator thought it probable that the life estate would determine before any of them would attain majority. The event was otherwise. But whatever may have been his precise view it is clear that he gave no direction to the executor to make the division. Doubtless a division of the small farm and lots could not be conveniently or advantageously made on account of the number of grandchildren surviving the widow. But the testator gave no direction to sell. Even if he had, the mere nomination of an executor would not have conferred authority on' him to sell. It must further appear that the proceéds of sale should pass through his hands for payment of debts or legacies, or to serve some clearly expressed ob *601 ject of the will. It might have been expedient for ■ the testator to have expressly directed a sale by the executor, or to-have impliedly done so by directing'him to pay the charge and make the division, or imposing such duties as could-only be discharged by first making a sale.
He neither directed a sale nor imposed such duties.
The intervention of the executor in procuring a judicial sale may have been convenient and acceptable to the devisees. But this is not enough to involve the sureties on Ins official bond. To implicate them it must have been in discharge of his duty as executor, and furthermore within the limit of the spécific duties named in the condition above quoted, and not merely under semblance and as agent of the devisees or otherwise.
The rights of the devisees to their aliquot shares would have been regarded in proceedings to enforce the charge; or could have been enforced in partition where the charge would be provided for. We are unable to find an intention on the part of the testator to create any trust whatever in respect to these remainders.
It was not the duty of the executor to pay the debt left by the widow. The testator, as we have seen, provided an ample security for its payment. There he stopped. By-accepting a devise of the fee charged with the debt, the devisees became personally bound to pay it. Thompson v. Thompson, 4 Ohio St., 333; Decker v. Decker, 3 Ohio, 166. It was the debt of the widow, and on her death became the debt of her estate- and of the remaindermen. It was not the debt of the testator in any^ proper sense. Much less can it be said to be one of “ his debts ” in the strict sense in which these words are used in the sureties’covenant.
The fact that Yeager recovered judgment against the executor as such for the amount of the widow’s debt does not affect the sureties. They were not parties'to the suit, nor in any manner concluded by the judgment. As the estate was not bound for the debt the judgment does not conclude them. Curtis v. Bank, 39 Ohio St., —.
*602 Nor are the rights of the sureties affected by the judicial proceedings resulting in a sale of the land and the order of distribution. Those proceedings throughout rest upon an unwarrantable assuniption of power and duty of the executor under the will. And it does not appear that the sureties participated in or had any knowledge of the transactions.
It follows that the liability of the executor for the money due Mrs. Saum is not official, but personal only; and his failure'to pay is not a breach of the condition.

Judgments reversed.